**In Re: Search WARRANT**

**No. 03–1130–01JGG.**

United States District Court,
M.D. Florida.
Orlando Division.

Dec. 16, 2003.

against the United States to be maintained in federal court." *Chandler,* 846 F.Supp. at 53.

Carmen Alpizar, Rywant, Alvarez, Jones, Russo & Guyton, P.A., Tampa, FL, for Carlos Diaz.

David J. Stefany, Allen, Norton & Blue, P.A., Tampa, FL, for Wehr Constructors, Inc.

## AMENDED [1] ORDER AND MEMORANDUM OF DECISION

GLAZEBROOK, United States Magistrate Judge.

### I. THE ISSUES

The government asks this Court to issue a search warrant to seize electronic data, including the contents of electronic communications, maintained by a web site in the Northern District of California.[2] Among other things, the government seeks to learn the names of all web-site users who have accessed certain pornographic images of children posted on the web site. The federal courts are courts of limited jurisdiction, and Congress describes the scope of a district court's authority to seize information and other property. Before issuing a warrant to seize property outside the Middle District of Florida, this Court first must ascertain the basis for its authority. Second, this Court must ascertain the scope of its authority, and issue only warrants that are authorized by law.

### II. STATUTORY AUTHORITY TO SEARCH AND SEIZE PROPERTY OUTSIDE THE DISTRICT

A. The Standard for Interpreting Statutes

 In construing a statute, the district court first looks to the plain language

---

1. This amended order eliminates one erroneous paragraph relating to a sunset provision.

2. An agent of the FBI has been prepared to sign the application for a warrant and supporting affidavit in the court file. The application and affidavit remains unsigned because it is the undersigned's practice to ask the agent to swear and sign the application just prior to issuance so as to include any revisions that the government may wish to make. The court views the unsigned application as a valid application for a warrant.

of the statute. *See Albernaz v. United States,* 450 U.S. 333, 336, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); *accord, United States v. Veal,* 153 F.3d 1233, 1245 (11th Cir.1998). Words are interpreted with their ordinary and plain meaning because the Courts assume that Congress uses words in a statute as they are commonly understood. *See Veal,* 153 F.3d at 1245; *United States v. McLeod,* 53 F.3d 322, 324 (11th Cir.1995).

Review of legislative history is unnecessary "unless a statute is inescapably ambiguous." *Veal,* 153 F.3d at 1245; *Solis–Ramirez v. U.S. Department of Justice,* 758 F.2d 1426, 1430 (11th Cir.1985) (per curiam); *accord, United States v. Rush,* 874 F.2d 1513, 1514 (11th Cir.1989) (where statutory language is clear, the Court will not create an ambiguity with legislative history). The plain language of the statute is conclusive as clearly expressing legislative intent unless the resulting application would be "absurd" or "internal inconsistencies" must be resolved. *See United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981); *Veal,* 153 F.3d at 1245. When statutory language is clear and unambiguous, it controls interpretation "absent a legislative intent to the contrary." *United States v. Grigsby,* 111 F.3d 806, 816 (11th Cir.1997). When a court does consider congressional intent, however, it may consider titles and section headings as meaningful when construing the whole statute. *House v. Commissioner of Internal Revenue,* 453 F.2d 982 (5th Cir.1972).

The United States Court of Appeals for the Eleventh Circuit reports a recent decision in which an anonymous hacker had illegally entered the defendant's computer, and then sent evidence to the police of the sexual exploitation of children and the possession of child pornography. *United States v. Steiger,* 318 F.3d 1039 (11th Cir. 2003). The district court refused to suppress evidence of the crimes, and the defendant sought to set aside his convictions. Because 18 U.S.C. § 2517(3) authorizes the disclosure of electronic evidence at trial if it is acquired in accordance with the Wiretap Act, the defendant argued that—by negative implication—Congress also intended the suppression of illegally-intercepted electronic communications. *Steiger,* 318 F.3d at 1046.

The Eleventh Circuit declined to glean legislative intent from a negative implication where Congress had chosen express language that suppressed only oral and wire communications. *Steiger,* 318 F.3d at 1046, 1050—51. Courts generally presume that "Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another." *Steiger,* 318 F.3d at 1050—51 (citing *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 536, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994)). That presumption is "made even stronger when, as here, Congress has amended a statute to include certain language in some, but not all, provisions of the statute." 318 F.3d at 1051. In *Steiger,* Congress had amended numerous sections of the Wiretap Act to include "electronic communications," but had not amended § 2515. Congress also had passed the USA PATRIOT Act without such an amendment. 318 F.3d at 1050. The omission of "electronic communications" from § 2515 was dispositive, and the Eleventh Circuit found no statutory basis for suppression. *Steiger,* 318 F.3d at 1050—51.

B. Seizing the Contents of Electronic Communications Stored on a Web Site

The government asks this Court to issue a warrant to search and seize "electronic data" which is now maintained by a legitimate "dot-com" web site in the Northern

District of California.[3] The government seeks information about a man whom local police arrested in Orlando, Florida on out-of-state charges, and who confessed to downloading illicit images from the web site. The government also seeks detailed information about the web-site's other "users"—including the names, activity records, telephone caller ID records, files accessed, content of communications, and subscriber information for every user who has accessed any of 59 password-protected pornographic pictures of children. The government seeks both records and content.

As a general rule, federal law prohibits web site operators from voluntarily disclosing customer communications and records. *See* 18 U.S.C. § 2702(a). Congress created an exception to permit voluntary disclosure of communications to a law enforcement agency if the contents appear to pertain to the commission of a crime, and also to permit disclosure as authorized in 18 U.S.C. § 2703. *See* 18 U.S.C. § 2702. Section 2703 permits any federal or state "governmental entity" to require disclosure of the contents of stored electronic communications "**only pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation or equivalent State warrant.**" 18 U.S.C. § 2703(a)—(b) (emphasis supplied).

As mandated by Congress in § 2703, the government may obtain a warrant only if it is issued using the procedures described in the Federal Rules of Criminal Procedure. This Court therefore adheres to the procedures described in Fed. R. Cr. P. 41 governing search and seizure.

Rule 41(b) establishes the district court's authority to issue a warrant:

(b) Authority to Issue a Warrant. At the request of a federal law enforcement officer or an attorney for the government:

(1) a magistrate judge with authority in the district—or if none is reasonably available, a judge of a state court of record in the district—has authority to issue a warrant to search for and seize a person or property located *within the district;*

(2) a magistrate judge with authority in the district has authority to issue a warrant for a person or property outside the district if the person or property is located *within the district* when the warrant is issued but might move or be moved outside the district before the warrant is executed; and

(3) a magistrate judge—in an investigation of domestic terrorism or international terrorism (as defined in 18 U.S.C. § 2331)—having authority in any district in which activities related to the terrorism may have occurred, may issue a warrant for a person or property *within or outside that district.*

Fed. R. Cr. P. 41(b) (emphasis supplied). Thus, in an investigation of domestic terrorism and international terrorism as defined in 18 U.S.C. § 2331, Congress has authorized judges in any district in which activities related to terrorism may have occurred to issue warrants to search and seize property that is located *within or outside* that district. Fed. R. Cr. P. 41(b). In an investigation of all other crimes (felonies, misdemeanors, and petty offenses),

---

**3.** According to the government, investigative agencies in the Northern District of California declined to assist the Office of the United States Attorney for the Middle District of Florida in obtaining a warrant in California because they viewed the USA PATRIOT Act as authorizing issuance in the home jurisdiction, and because it would "take you months" to obtain the warrant in California. *See* Transcript of December 9, 2003 Hearing at 36.

Congress has expressly authorized judges to issue warrants to search and seize property that is located *within* the district. Fed. R. Cr. P. 41(b).

The government is correct that Rule 41 does not modify any statute regulating search or seizure. *See* Fed. R. Cr. P. 41(a)(1). The government argues that the Stored Wire and Electronic Communications and Transactional Records Access, 18 U.S.C. Chapter 121, §§ 2701—11, as modified by the USA PATRIOT Act, is a "statute regulating search or seizure" within the meaning of Rule 41(a), and that this Court must ignore any limits on authority imposed in Rule 41(b) that are contrary to authority granted in that act.

The question at issue here is whether 18 U.S.C. §§ 2703 grants any authority to issue warrants to seize out-of-district property contrary to Rule 41(b). At oral argument, the government argued that the express statutory language of 18 U.S.C. §§ 2703 and 2711—even without resort to the statutes' legislative history to determine congressional intent—authorizes this Court to issue a warrant to seize property in the Northern District of California in crimes that do not involve terrorism. *See* Transcript of December 11, 2003 Hearing at 10—11, 21. The government's analysis, however, seems to based more on "wishful thinking" than on an analysis of the words codified in the statute.

In construing the electronic communications statute, the Court first looks to the plain language of the statute, and interprets words with their ordinary and plain meaning. Even if this Court could ignore the express limitation of authority to terrorism cases granted in Fed. R. Cr. P. 41(b), the words chosen by Congress to amend 18 U.S.C. §§ 2703 and 2711 say nothing that extends this Court's authority to issue out-of-district warrants in all other types of criminal cases. This Court presumes that Congress acted intentionally

and purposely in the USA PATRIOT Act when it amended Rule 41(b) to limit out-of-district warrants to terrorism cases, and amended § 2703 to refer to the Federal Rules of Criminal Procedure.

The words "using the procedures described in the Federal Rules of Civil Procedure" do not authorize warrants to seize out-of -district property in non-terrorism cases. *See* 18 U.S.C. § 2703(a) and (b). On the contrary, the procedures under Rule 41 limit out-of-district warrants to terrorism cases. The words "by a court with jurisdiction over the offense under investigation" do not authorize out-of-district warrants in non-terrorism cases. *See Id.* Courts without jurisdiction over the offense under investigation have never been authorized to issue warrants.

Neither do the words "without geographic limitation" authorize out-of -district warrants. *See* 18 U.S.C. §§ 2711 and 3127. The words "without geographic limitation" are relevant only in determining whether a court is one of "competent jurisdiction" under 18 U.S.C. § 2703(d). Moreover, those words merely assert that there is no geographic limitation on which of the federal courts are competent to issue a warrant for the contents of electronic communications under 18 U.S.C. § 2703(d).

■ In conclusion, the electronic communications statute is not "inescapably ambiguous." A review of legislative history is unnecessary. The plain language of the statute is clear, and this Court will not create an ambiguity with legislative history. The plain language of the statute expresses legislative intent to limit out-of-district authority to cases involving terrorism. The government relies solely on the language of the statute to support its argument, asserting that there was no helpful legislative history. *See* Transcript of December 11, 2003 Hearing at 10—11, 21. Nevertheless, the Court now proceeds to

discuss the limited legislative history in order to aid review on appeal.

## C. Determining the Intent of Congress

In response to an urgent need to provide law enforcement with tools to detect and apprehend terrorists, Congress hastily enacted the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 [hereinafter "USA PATRIOT Act"] on October 24, 2001 (House), October 25, 2001 (Senate), and October 29, 2001 (became law). Terrorism was the thrust of the USA PATRIOT Act, and there is no doubt that the Act extended this Court's authority to issue warrants to search and seize electronic communications outside the district in terrorism cases. *See* Fed. R. Cr. P. 41(b)(3).

The words actually chosen by Congress and codified in Fed. R. Cr. P. 41(b) and 18 U.S.C. §§ 2703, 2711, however, do not support the government's argument that the USA PATRIOT Act expanded district court (and state court) authority to issue out-of-district warrants for every conceivable non-terrorism crime in the prosecutors' arsenal. This Court declines to glean legislative intent from a negative implication where Congress has chosen express language authorizing warrants to seize out-of-district property only in terrorism investigations.

Two consecutive sections of the USA PATRIOT Act are central to the scope of this Court's authority, Sections 219 and 220:

Section 219. Single–Jurisdiction Search Warrants for Terrorism.

Rule 41 (a) of the Federal Rules of Criminal procedure is amended by inserting after "executed" the following: "and (3) in an investigation of domestic terrorism or international terrorism (as defined in section 2331 of title 18, United States Code), by a Federal magistrate judge in any district in which activities related to the terrorism may have occurred, for a search of property or for a person within or outside the district."

Section 220. Nationwide Service of Search Warrants for Electronic Evidence

(a) In General.-Chapter 121 of title 18, United States Code, is amended—

(1) in section 2703, by striking "under the Federal Rules of Criminal Procedure" every place it appears and inserting "using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation"; and

(2) in section 2711 -

(A) in paragraph (1), by striking "and";

(B) in paragraph (2), by striking the period and inserting "; and"; and

(C) by inserting at the end the following: "(3) the term 'court of competent jurisdiction' has the meaning assigned by section 3127, and includes any Federal court within that definition, without geographic limitation.".

(b) Conforming Amendment. Section 2703(d) of title 18, United States Code, is amended by striking "described in section 3127(2)(A)".

USA PATRIOT Act, PL 107–56, 2001 HR 3162, 115 Stat. 272, 291 (October 26, 2001).

In consecutive sections of the final enacted version of the USA PATRIOT Act (Sections 219 and 220), Congress simultaneously amended Fed. R. Cr. P. 41 to expand court authority to issue warrants for property outside the district in terrorism cases, and amended 18 U.S.C. § 2703 to require Courts to issue warrants for electronic communications using the procedures describe in the Federal Rules of

Criminal Procedure.[4] Because Section 220 expressly directs adherence to the Federal Rules of Criminal Procedure, it would be implausible to read Fed. R. Cr. P. 41(b) in a manner that ignores the express restrictions imposed by Congress in the preceding section (i.e., in Section 219, which granted out-of-district authority only in terrorism cases).

The heading to Section 220 reads: "Nationwide Service of Search Warrants for Electronic Evidence." That heading says nothing about nationwide service of search warrants in non-terrorism cases. The text of Section 220 does not authorize the issuance of out-of-district search warrants in non-terrorism investigations. The heading of Section 220 likely reflects the expanded authority expressly granted in Section 219 to issue out-of-district warrants for nationwide service in terrorism cases. Indeed, the text of Section 220 does nothing to further expand the government's right to obtain warrants to seize out-of-district property in all conceivable types of garden-variety criminal investigations. If Congress were to grant such an enormous expansion of the district court's authority, it would have done so expressly.

What little legislative history exists behind the quickly-enacted USA PATRIOT Act does not suggest that Congress had an intent contrary to the codified statutory language. On September 24, 2001, the House Committee on the Judiciary held a hearing on the Administration's draft terrorism act. The record of that hearing provides a consultation draft with section-by-section analysis dated September 20, 2001 which provides, in pertinent part, as follows:

## Section 108. Nationwide Service of Search Warrants for Electronic Evidence

Current law requires the government to use a search warrant to compel a provider to disclose unopened e-mail. 18 U.S.C. § 2703(a). Because Federal Rule of Criminal Procedure 41 requires that the "property" to be obtained be "within the district" of the issuing court, however, the rule may not allow the issuance of § 2703(a) warrants for e-mail located in other districts. Thus, for example, where an investigator in Boston is seeking electronic e-mail in the Yahoo! account of a **suspected terrorist**, he may need to coordinate with agents, prosecutors, and judges in the Northern District of California, none of whom have any other involvement in the investigation. This electronic communications information can be critical in establishing relationships, motives, means, and plans **of terrorists**. Moreover, it is equally relevant to cyber-incidents in which a terrorist motive has not (but may well be) identified. Finally, even cases that require the quickest response (**kidnappings, threats, or other dangers to public safety or the economy**) may rest on evidence gathered under § 2703(a). To further public safety, this section accordingly authorizes courts with jurisdiction over investigations to compel evidence directly, without requiring the intervention of their counterparts in the districts where major Internet service providers are located.

Consultation Draft of September 20, 2001, Anti–Terrorism Act of 2001, submitted for hearing record at hearing before House

---

**4.** The government makes much of the fact that Section 220 of the Act struck the previous language in § 2703, which required issuance of warrants "under" the Federal Rules of Criminal Procedure. The change appears to be designed to better accommodate the issuance of warrants in state courts that do not issue warrants "under" the federal rules. In any event, the change cannot be read as an expansion of the Court's authority to issue out-of-district warrants.

Committee on the Judiciary on September 24, 2001, USA Patriot Act Legis. History 10 (A & P), available on WESTLAW, PA-TRIOT–LH 10 at 48 (emphasis supplied). The Administration draft of what later became Section 202 of the USA PATRIOT Act seems to be oriented toward preventing terrorism, not ordinary crimes. Although the draft refers to "kidnappings, threats, or other dangers to public safety or the economy" that might require a quick response, those are all crimes that form the basis of domestic terrorism. The kidnapping of government officials by terrorists and terrorist threats to release biological contaminants or bombs were likely in the minds of the lawmakers on September 24, 2001.

A House Report dated October 11, 2001 provides as follows:

Section 108. **Nationwide Service of Search Warrants for Electronic Evidence**

Title 18 U.S.C. § 2703(a) requires a search warrant to compel service providers to disclose unopened e-mails. This section does not affect the requirement for a search warrant, but rather attempts to address the investigative delays caused by the cross-jurisdictional nature of the Internet. Currently, Federal Rules of Criminal Procedure 41 requires that the "warrant" be obtained "within the district" where the property is located. An investigator, for example, located in Boston who is investigating a **suspected terrorist** in that city, might have to seek a suspect's electronic e-mail from an Internet service provide (ISP) account located in California. The investigator would then need to coordinate with agents, prosecutors and judges in the district in California where the ISP is located to obtain a warrant to search. These time delays could be devastating to an investigation, especially where additional **criminal or** terrorist acts are planned.

Section 108 amends § 2703 to authorize the court with jurisdiction over the investigation to issue the warrant directly, without requiring the intervention of its counterpart in the district where the ISP is located.

The sunset provision in section 162 would sunset this section on December 31, 2003.

H.R. Rep. 107–236(I), 107th Cong., 1st Sess.2001, available at 2001 WL 1205861 (Leg.Hist.) (emphasis supplied). Again, the House Report of what later became Section 202 of the USA PATRIOT Act seems to be oriented toward preventing terrorism, not ordinary crimes. The reference to "additional criminal or terrorist acts" can hardly imply congressional intent to expand district court authority to all non-terrorist crimes. Indeed, all terrorist acts *are* criminal acts.

On October 25, 2001, the Senate considered and passed the USA PATRIOT Act in a single day. Senator Patrick Leahy of Vermont, then chairman and ranking member of Senate Judiciary Committee, spoke in favor of the bill, S. 1510 (H.R. 3162). When urging passage of the section on warrants for out-of-district property, Senator Leahy referred only to nationwide service in terrorism investigations:

Section 220 of this bill authorizes nationwide service of search warrants *in terrorism investigations*. This will allow the judge who is most familiar with the developments in a fast-breaking and complex terrorism investigation to make determinations of probable cause, no matter where the property to be searched is located. This will not only save time by avoiding having to bring up-to-speed another judge in another jurisdiction where the property is located, but also serves privacy and Fourth

Amendment interests in ensuring that the most knowledgeable judge makes the determination of probable cause.

147 Cong. Rec. S. 10990, 107th Cong., 1st Sess. (October 25, 2001).

The section-by-section analysis printed in the Senate record by unanimous consent further provided, in pertinent part, as follows:

> Sec. 219. Single-jurisdiction search warrants for terrorism. Both the House and Senate bills included this provision to amend Federal Rule of Criminal Procedure 41(a) to provide that warrants relating to the investigation of terrorist activities may be obtained in any district in which the activities related to the terrorism may have occurred, regardless of where the warrants will be executed. Same as Administration proposal.
>
> Sec. 220. Nationwide service of search warrants for electronic surveillance. Both the House and Senate bills included this provision to amend 18 U.S.C. § 2703(a) to authorize courts with jurisdiction over the offense to issue search warrants for electronic communications in electronic storage anywhere in the United States, without requiring the intervention of their counterparts in the districts where Internet service providers are located. **Narrower than Administration proposal in that it limits forum shopping problem by limiting to courts with jurisdiction over the offense.**

Section–by–Section Analysis, USA PATRIOT Act, H.R. 3162, 147 Cong. Rec. S. 10990, 107th Cong., 1st Sess. (October 25, 2001) (emphasis supplied). The section-by-section analysis revealed no intent inconsistent with the plain meaning of the codified text, and nothing inconsistent with Senator Leahy's understanding that Sec-

tion 220 related to the nationwide service of search warrants in terrorism investigations. As explained in the section-by-section analysis, Congress narrowed Section 220 from what the Administration had requested. Congress narrowed Section 220 to courts with jurisdiction over the terrorism offense in order to avoid forum shopping for the issuance of terrorism warrants in friendly but unrelated jurisdictions.

The statutory language is clear and unambiguous in limiting district court authority to issue out-of-district warrants to investigations of terrorism, and that language controls this Court's interpretation. The government has shown no legislative intent to the contrary. This Court therefore has no authority to issue a warrant to seize property in the Northern District of California in a child pornography investigation.

## III. THE SCOPE OF THE INFORMATION SOUGHT

Although this case involves child pornography, the government's argument for out-of-district warrants as far broader. In the preceding section of this decision, this Court rejected the government's argument that this Court has statutory authority to issue out-of-district warrants for electronic evidence of a crime other than for domestic or international terrorism. The Court now discusses the breadth of the information that the government seeks.

According to a logical extension of the government's argument, a court in Florida has the statutory authority to seize the names and computer addresses of everyone in the world who viewed an adult pornographic image posted on a web site in California, as well as e-mails and other electronic data that is evidence of any federal or state felony or misdemeanor.[5] Because the Court finds that it does not have

---

5. Federal law, for example, prohibits a wide variety of conduct: possession of pornography; possession of certain firearms; theft of government property worth less than $100; taking dove out of season; speeding in a manatee zone; letting a dog off a leash on federal property; battery on federal property;

the statutory authority to issue the out-of-district warrant requested, it is unnecessary to assess whether the application and affidavit establish probable cause to seize the full scope of the data that the government seeks.

Nevertheless, in order to aid appellate review, the Court proceeds to set forth the process that it would follow in the event of a determination that the United States District Court for the Middle District of Florida is authorized to seize property in the Northern District of California. This Court would evaluate the scope of the information that Congress has authorized this Court to seize, and then compare it to the scope of the records and electronic data that the government requests.

### A. The Standard for Seizure

Congress has established the criteria for issuing a warrant to search and seize electronic data:

> Requirements for court order.—A court order for disclosure under subsection (b) or (c) may be issued by any court that is a court of competent jurisdiction and shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation. In the case of a State governmental authority, such a court order shall not issue if prohibited by the law of such State.

18 U.S.C. § 2703(d). The term "court of competent jurisdiction" has the meaning assigned in the pen register statute, 18 U.S.C. § 3127, and includes any federal court within that definition, without geographic limitation. 18 U.S.C. § 2711(3). The pen register statute defines "court of

competent jurisdiction" as including "any district court of the United States (including a magistrate judge of such a court) or any United States court of appeals having jurisdiction over the offense being investigated." 18 U.S.C. § 3127(2)(A).

### B. Seizing the Names of Web Site Users

In this investigation, the government seeks electronic data that will reveal the pornographic images (i.e., photographs) of children which the defendant admitted that he viewed on the web site. The government also seeks the screen names and computer addresses of the people who posted those illicit photographs, as well the screen names and computer addresses of everyone who merely viewed the images. With respect to the individuals who viewed the pornographic images, the government intends to subpoena their e-mail addresses, and then to notify the local district attorney or country that the person is viewing child pornography. Transcript of December 9, 2003 Hearing at 34—35. The seized data would generate investigative leads for other divisions. *Id.* The government thereby hopes to locate children who are being abused, and to stop the abuse.

■ Without doubt, the United States District Court for the Middle District of Florida has jurisdiction over the offense being investigated as to the known defendant. The fact that the Orange County Sheriff's Office arrested the defendant in Orlando, Florida, on a state of Indiana warrant for possession of child pornography does not prohibit federal agents from investigating a violation of federal law arising from the possession of child pornography in Florida at the time of his arrest on out-of-state charges. The government has offered specific and articulable facts showing that there are reasonable grounds to

---

misprision of felony; possession of protected snakes and turtles; possession of archeologi-

cal artifacts; and protesting in a national park without a license.

**1308**

believe that the contents of the electronic communications, records, and other information sought about the defendant's viewing activities are relevant and material to an ongoing criminal investigation against the defendant.

Nevertheless, this Court has stopped short of determining the harder question—whether the government has offered specific and articulable facts showing that there are reasonable grounds to believe that the contents of *other people's* electronic communications and records—and information about *other people's* viewing activities—are relevant and material to an ongoing criminal investigation in the Middle District of Florida. In light of the disposition on the grounds of lack of authority to issue an out-of-district warrant, this Court has stopped short of determining whether electronic communications of persons who posted the photographs viewed by the defendant should be treated differently from the unknown universe of people who accessed or viewed the password-protected images.

## IV. CONCLUSION

The United States District Court for the Middle District of Florida declines to issue the requested search warrant to seize electronic data maintained by a "dot-com" web site in the Northern District of California in an investigation concerning child pornography. For the reasons stated above, Congress has not authorized this Court to seize out-of-district property except in cases of domestic terrorism or international terrorism. This order is final, and is entered without prejudice to seek relief in an appropriate judicial district on the presentation of this order together with any disposition on appeal.